# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

663

TP 12-02248

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, AND VALENTINO, JJ.

---

IN THE MATTER OF MARK DONVITO, VOLUNTARY
ADMINISTRATOR OF THE ESTATE OF NICHOLAS J.
DONVITO, DECEASED, PETITIONER,

V                                              MEMORANDUM AND ORDER

NIRAV R. SHAH, M.D., M.P.H., COMMISSIONER, NEW
YORK STATE DEPARTMENT OF HEALTH, ELIZABETH R.
BERLIN, EXECUTIVE DEPUTY COMMISSIONER, NEW YORK
STATE OFFICE OF TEMPORARY AND DISABILITY
ASSISTANCE, AND DAVID SUTKOWY, COMMISSIONER,
ONONDAGA COUNTY DEPARTMENT OF SOCIAL SERVICES,
RESPONDENTS.

---

MANNION & COPANI, SYRACUSE (ANTHONY F. COPANI OF COUNSEL), FOR
PETITIONER.

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (VICTOR PALADINO OF
COUNSEL), FOR RESPONDENTS NIRAV R. SHAH, M.D., M.P.H., COMMISSIONER,
NEW YORK STATE DEPARTMENT OF HEALTH, AND ELIZABETH R. BERLIN,
EXECUTIVE DEPUTY COMMISSIONER, NEW YORK STATE OFFICE OF TEMPORARY AND
DISABILITY ASSISTANCE.

---

Proceeding pursuant to CPLR article 78 (transferred to the
Appellate Division of the Supreme Court in the Fourth Judicial
Department by order of the Supreme Court, Onondaga County [Deborah H.
Karalunas, J.], entered December 4, 2012) to review a determination of
respondents.  The determination denied the application of petitioner's
decedent for certain Medicaid benefits.

It is hereby ORDERED that the determination is unanimously
confirmed without costs and the petition is dismissed.

Memorandum:  Petitioner, as administrator of his father's estate,
commenced this CPLR article 78 proceeding challenging the
determination that a seven-month delay on decedent's eligibility for
Medicaid coverage was properly imposed as a penalty for transferring
resources in order to qualify for Medicaid coverage and that
decedent's net available monthly income (NAMI) was properly deemed to
include payments he received from his civil service pension.  We
confirm the determination.

Decedent entered an assisted living facility in March 2003 when
he was 83 years old.  In October 2008, having suffered a stroke

several months earlier, decedent was admitted into a nursing home. Less than two years later, in June 2010, petitioner filed a Medicaid application on behalf of decedent, having been given power of attorney. Onondaga County Department of Social Services (DSS) denied the application, determining that decedent was ineligible for medical assistance for a seven-month period because he gave $54,162.05 to petitioner and members of petitioner's family from June 12, 2007 to August 14, 2008, which was within the five-year look-back period. The last of the six transfers — to petitioner in the amount of $6,500 — was made approximately one month after decedent suffered his stroke. In January 2011, at the end of the seven-month penalty period, decedent became eligible for Medicaid. DSS also determined that decedent's NAMI included the sum of $1,756.90, which he had been receiving on a monthly basis from his civil service pension.

At the fair hearing conducted on the administrative appeal filed by petitioner, petitioner testified that the $6,500 payment he received from decedent was not a gift, but instead constituted reimbursement for expenses he incurred on behalf of decedent. Although petitioner acknowledged that the other five transfers of funds to him and his family members were gifts, he contended that decedent had a history of giving money to him and that, in making the most recent gifts, decedent was not motivated by a desire to become eligible for Medicaid. With respect to the determination of decedent's NAMI, petitioner testified that, although decedent had been receiving his monthly payments from his civil service pension, for unknown reasons decedent stopped receiving the payments in September 2011. Petitioner thus contended that the pension payments should not be included in decedent's NAMI. The determination of DSS was affirmed on the administrative appeal, and we now confirm the determination following the fair hearing inasmuch as it is supported by the requisite substantial evidence (see generally Matter of Mallery v Shah, 93 AD3d 936, 937).

"In determining the medical assistance eligibility of an institutionalized individual, any transfer of an asset by the individual . . . for less than fair market value made within or after the look-back period shall render the individual ineligible for nursing facility services" for a certain penalty period (Social Services Law § 366 [5] [d] [3]). The look-back period is the "sixty-month period[] immediately preceding the date that an [applicant] is both institutionalized and has applied for medical assistance" (§ 366 [5] [d] [1] [vi]). Where an applicant has transferred assets for less than fair market value, the burden of proof is on the applicant to "rebut the presumption that the transfer of funds was motivated, in part if not in whole, by . . . anticipation of future need to qualify for medical assistance" (Mallery, 93 AD3d at 937 [internal quotation marks omitted]; see generally § 366; 18 NYCRR 360-4.4).

Here, petitioner failed to meet his burden of proof at the fair hearing with respect to the transfer of resources during the look-back period. Petitioner offered no receipts or other documentary evidence, such as credit card bills or cancelled checks, to support his assertion that he purchased on decedent's behalf, inter alia,

furniture and clothing in the amount of $6,500.  Indeed, petitioner did not specify where he purchased the items or the cost of each item. We also note that the $6,500 transfer was made to petitioner shortly after decedent suffered a stroke, at which time decedent's need for nursing home services could easily have been anticipated (*see Matter of Javeline v Whalen*, 291 AD2d 497, 497).  With respect to the other transfers, which petitioner concedes were gifts, petitioner did not establish that decedent was not motivated, at least in part, by a desire to qualify for Medicaid.  Contrary to petitioner's contention, decedent did not have a consistent history of giving money to relatives; before the transfers in question, decedent's most recent gift was seven years earlier.

Finally, petitioner failed to establish that decedent's civil service pension was improperly included in his NAMI.  Decedent's bank records showed that the pension payments were made directly into his account on a monthly basis until September 2011, and petitioner offered no explanation for why decedent was no longer receiving those pension benefits, which presumably were payable for life.  It is undisputed that "available income" includes pension benefits (*see* 18 NYCRR 360-4.3 [b] [3]), and DSS did not have the burden at the fair hearing of proving that decedent was still receiving those payments.

Entered:  July 19, 2013                         Frances E. Cafarell
                                                Clerk of the Court